UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Raul SILVA, | Case No.: 22-cv-1959-AGS-MMP |
| Appellant, | **ORDER AFFIRMING BANKRUPTCY COURT** |
| v. | |
| Guillermo GOMEZ, et al., | |
| Appellees. | |

This bankruptcy case has been riddled with administrative errors. Many of those errors made it difficult for two pro se creditors to verify that their claims were covered by debtor's bankruptcy discharge when they engaged in collection actions against him. Now debtor contends that the bankruptcy court erred by not holding the creditors in civil contempt for violating the discharge order. Given the conflicting information the creditors received, the bankruptcy court did not abuse its discretion in refusing to levy sanctions.

## BACKGROUND

Appellees Guillermo and Lisandra Gomez sued appellant Raul Silva in small claims court. (*See* ECF 8-2, at 2.) Silva then filed for bankruptcy, but erroneously failed to list the Gomezes as creditors, despite the pending small-claims action. (*Id.*) When the parties later appeared for the small-claims hearing, Silva failed to notify the Gomezes or the judge about the pending bankruptcy. (*Id.*) After Silva lost the small-claims case, he amended his bankruptcy schedule to include the Gomezes as creditors, but the errors weren't over. (*Id.*) Silva didn't update his List of Creditors, as required by local rule. (*Id.*) And the bankruptcy court's staff made another "mistake" by failing to "investigate the matter" or correct the inconsistency between the schedules and the List of Creditors. (*Id.* at 3.)

Silva didn't serve the Gomezes with the petition or amended schedules. Instead, Silva's counsel sent them a notice that referenced an upcoming creditors' meeting, but it was not delivered until after that meeting occurred. (ECF 8-2, at 3; ECF 8-1, at 18.) So the day after getting the notice, Ms. Gomez took it to the bankruptcy court to get clarity.

1    (ECF 8-2, at 3; ECF 8-1, at 26.) "The unrefuted testimony is that she was told that the

2    [Gomezes] were not listed on the List of Creditors and, thus, were not entitled to or did not

3    need to take action" in the bankruptcy case to protect their judgment. (ECF 8-2, at 3;

4    *see also* ECF 8-1, at 26.) Thus, the Gomezes took no further action in the bankruptcy case.

5          A month and a half later, Silva received his bankruptcy discharge. (ECF 8-2, at 3.)

6    But because the Gomezes were not on the List of Creditors, the "Bankruptcy Noticing

7    Center did not provide them with notice of the discharge." (*Id.*) Unaware of this discharge

8    order, the Gomezes sent Silva a demand letter. (*Id.*) Silva's attorney replied, informing

9    them that the collection action violated the discharge, which could subject them to

10   contempt sanctions, and advising them to "go quietly into the night." (ECF 8-2, at 3;

11   ECF 8-1, at 30.) He did not, however, provide them with the schedules or discharge order.

12   (ECF 8-2, at 4.)

13         In response, the Gomezes "contacted the Bankruptcy Court" and reviewed PACER,

14   confirming again that they were not on the List of Creditors. (ECF 8-2, at 4; ECF 8-1,

15   at 31.) They also contacted the bankruptcy court's Help Center, staffed with "Legal Aid"

16   attorneys, who told them to "review the List of Creditors" to see if they were included.

17   (ECF 8-2, at 4; ECF 8-1, at 33.) Another search of that document once again came up

18   empty. (ECF 8-2, at 4; ECF 8-1, at 53.)

19         So, the Gomezes set a debtor's exam to ask Silva about his assets. Silva's counsel

20   demanded that they take the exam off calendar and filed a notice of bankruptcy discharge

21   in the small-claims court. (ECF 8-2, at 4; ECF 8-1, at 40.) The Commissioner advised the

22   Gomezes to return to the bankruptcy court yet again to figure out the status of the discharge.

23   (ECF 8-2, at 4–5.)

24         This time the Gomezes were finally informed that "there had been a clerical error in

25   not adding them to the List of Creditors after [Silva] amended his schedules." (*Id.* at 5.)

26   The bankruptcy court reopened the case and reissued the discharge order, finally serving it

27   on the Gomezes. (*Id.*) They then ceased all collection activity against Silva. (*Id.*)

28

1   Silva then moved the bankruptcy court for contempt sanctions against the Gomezes

2   for violating the discharge order. The court denied that motion, noting that the Gomezes

3   were reasonably confused about the status of the discharge order and that "the discharge

4   violations would not have occurred but for the series of mistakes by [Silva] and the

5   [bankruptcy court employees]." (ECF 8-2, at 6, 8.)

6   Silva appeals the denial of contempt sanctions on two grounds: (1) that the

7   bankruptcy court applied a legal standard for contempt "that the Supreme Court had

8   overruled" (ECF 15, at 11–12); and (2) that "it misapplied the facts" to the correct legal

9   standard (*id*. at 15).

### DISCUSSION

11   This court reviews "for an abuse of discretion the bankruptcy court's decision on a

12   motion for contempt." *In re Freeman*, No. 2:11-BK-34162-NB, 2019 WL 5584884, at *4

13   (B.A.P. 9th Cir. Oct. 29, 2019). "A bankruptcy court abuses its discretion if it applies the

14   wrong legal standard, misapplies the correct legal standard, or makes factual findings that

15   are illogical, implausible, or without support in inferences that may be drawn from the facts

16   in the record." *Id.*

**A.    Contempt Legal Standard**

18   First, Silva argues that the bankruptcy court erred by using a "purely subjective

19   standard" to evaluate whether civil-contempt sanctions were warranted. (ECF 15, at 10.)

20   In *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), the Supreme Court rejected the sort of

21   "purely subjective" approach that would insulate creditors from civil contempt so long as

22   they had a "'good faith [subjective] belief' that the discharge order 'does not apply to the

23   creditor's claim,'" "even if the creditor's belief is unreasonable." *Id.* at 1799. The Court

24   instead held that "civil contempt may be appropriate if there is no objectively reasonable

25   basis for concluding that the creditor's conduct might be lawful." *Id.* Specifically,

26   bankruptcy courts "may hold a creditor in civil contempt for violating a discharge order if

27   there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Id.*

28

1    In its decision, the bankruptcy court accurately set forth this *Taggart* standard, and

2    then refused to impose civil-contempt sanctions. (ECF 8-2, at 5–6.) Of note, the court

3    concluded that "the facts of this case would leave any non-lawyer with a fair ground of

4    doubt" as to whether the discharge order barred the Gomezes' allegedly contemptuous

5    conduct. (*Id.* at 6.) Silva complains that this line evinces a "purely subjective standard."

6    (ECF 15, at 10.) But it is almost a verbatim quote from *Taggart* itself: "civil contempt

7    should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of

8    the defendant's conduct." 139 S. Ct. at 1801 (cleaned up). In any event, the bankruptcy

9    court's language describes an objective standard—focusing on the viewpoint of "any

10   non-lawyer," not the Gomezes' subjective beliefs. (*See* ECF 8-2, at 6.)

11   In short, the bankruptcy court correctly set forth—and did not abuse its discretion as

12   to—the proper legal standard.[1]

13   **B.    Application of the Facts**

14   Silva also argues that the bankruptcy court misapplied the facts to the law in

15   declining to sanction the Gomezes. According to Silva, several facts suggest that the

16

17   _____

18   [1] Silva correctly criticizes another line in the court's decision: "Debtor failed to

19   establish that no objectively reasonable basis existed supporting the conclusion that

     Creditors' conduct might be unlawful." (*See* ECF 8-2, at 6; ECF 15, at 12.) The bankruptcy

20   court quoted the correct standard elsewhere: "civil contempt may be appropriate if there is

     no objectively reasonable basis for concluding that the creditor's conduct might be *lawful*."

21   (ECF 8-2, at 5 (quoting *Taggart*, 139 S. Ct. at 1799 (emphasis added)).) And the court

22   seems to have correctly applied that standard to the facts throughout the opinion. (*See, e.g.*,

     *id.* at 6 (noting the "series of mistakes" that "created an objectively reasonable basis for

23   [the Gomezes] to believe that the discharge order did not apply to them"); *id.* at 8 (detailing

24   Silva's actions that created "an objectively reasonable basis to conclude that scheduling

     the judgment debtor's exam was lawful").) Although the criticized sentence admittedly has

25   one too many negatives, this Court is satisfied that the bankruptcy court generally observed

26   the appropriate legal standard. *See United States v. Phipps*, 319 F.3d 177, 190 (5th Cir.

     2003) (holding an "isolated and inadvertent error" in a "single slip of the tongue" as to the

27   "burden" is not reversible error when the trial court repeatedly mentioned and utilized the

28   correct standard elsewhere).

Gomezes knowingly violated the discharge order by continuing collection activity: First, the Gomezes were "served notice that they were intended as creditors of the estate." (ECF 15, at 13.) Then, Silva's counsel emailed the Gomezes that Silva had "discharged any obligation owed to them in the Chapter 7 bankruptcy," that their debt-payment demands violated that discharge order, and that their conduct could expose them "to a potential citation for contempt." (*Id.*) Finally, Silva argues that—despite the Gomezes' duty "to ascertain the correctness" of that email notice, "not disregard it"—they failed to conduct an adequate inquiry. (*Id.* at 14–15.)

The bankruptcy court mentioned this same evidence in its decision (*see* ECF 8-2, at 2–4), but found that the Gomezes' investigation into the bankruptcy was reasonable. When Silva's counsel emailed them about the discharge, the Gomezes had not been served with it. (*See* ECF 8-1, at 41; ECF 8-2, at 3.) As they were not required to take opposing counsel's word for it, they responded by making inquiries. They spoke to clerk's office employees at the bankruptcy court, reviewed PACER, and even reached out to Legal Aid attorneys. (ECF 8-2, at 3–4.) In each case the answer was the same: they were missing from the List of Creditors, which suggested that they were "not covered by the bankruptcy." (*Id.*) After this investigation, the Gomezes concluded that the discharge order didn't apply to them. They were wrong. But the bankruptcy court was well within its discretion to conclude that their inaccurate belief was reasonable. *See In re Taggart*, 980 F.3d 1340, 1348 (9th Cir. 2020) ("[T]he question is whether the Creditors had some—indeed, *any*—objectively reasonable basis for concluding" the bankruptcy discharge order didn't apply.). And the court was well within its discretion to withhold the "severe remedy" of civil contempt in these circumstances. *See Taggart*, 139 S. Ct. at 1802.

Finally, it bears noting that, even if the *Taggart* standard had been satisfied, the bankruptcy court concluded that it would not be proper to sanction the Gomezes. Again, this Court sees no abuse of discretion in that decision. Many errors—by court staff and appellant Silva himself—paved the path to the Gomezes' own error in continuing collection activity. To hold them alone responsible for this parade of mistakes would

1   undermine the "equity practice" undergirding the bankruptcy court's contempt authority.

2   *See Taggart*, 139 S. Ct. at 1801.

3                                **CONCLUSION**

4         The bankruptcy court set forth the proper legal standard for civil contempt, and it

5   did not abuse its discretion in refusing to impose contempt sanctions. The Clerk is directed

6   to issue a judgment and close this case.

7         **AFFIRMED.**

8   Dated:  September 5, 2023

9

10                                    _____
                                      Andrew G. Schopler
                                      United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           6